Thank you, your honors. Thank you. The next case we have scheduled for argument is Saige v. Capstone Logistics. Good morning, your honors. May it please the court, Benjamin Schatz of Duane Morris for Defendant and Appellant Capstone Logistics. I'd like to reserve five minutes for rebuttal. The district court here denied Capstone's motion for arbitration based on a misunderstanding of the Supreme Court precedent on mootness. The district court's analysis was that if the plaintiff's individual claims were sent to arbitration, then the plaintiffs would no longer have a stake in their class claim, and therefore, the class claim would have to be dismissed as moot. That's simply wrong. Even if sent to arbitration, the plaintiffs would still have a stake in their class claims that would prevent a dismissal for mootness. The district court's analysis was based on a case called Genesis Healthcare, and Genesis is completely distinguishable. It was an FLSA collective action, not a Rule 23 class action, and the Supreme Court has made clear that FLSA collective actions are fundamentally different from class actions. And this court has also said that, and therefore, the Genesis case was simply off point, and the district court judge made a mistake in figuring – in deciding that there would be a mootness problem. But counsel, so what about the Villa-Lobos issue? Okay. So moving beyond the – what the district court did because that's quite wrong and getting to – I agree with you on that. Thank you, your honor. I don't know how you get around Villa-Lobos. Okay. Well, so let's then talk about the real issue that's here. And I'd like to start by making clear that the complaint here has ten causes of action. The first eight are labor code claims. The ninth is a UCL claim, and the tenth claim is a PAGA claim. And Adolph and Villa-Lobos, those only relate to the PAGA claim. So – and the complaint itself, the very first line of the complaint says that the labor code claims are being brought on an individual basis and also on a class basis. So to be clear, the complaint that we're looking at here has four analytically distinct types of claims. And I point the court to the Westmoreland v. KinderCare education case, which is in the briefing at page 980 because that case talks about what – how to look at these four different types of distinct claims. So the four are labor code individual, labor code class, PAGA individual, PAGA – Precisely. And that's exactly right. So the class claims, the individual labor code claims, they're not affected by the Adolph or the Villa-Lobos case, which I will get to in a minute. I'm not trying to avoid your question, but I am trying to put it in context because it doesn't answer the question about what should happen in this case because there are still individual labor code claims. And at the very least, those need to be sent to arbitration. There's no way around that. The plaintiff in a class action like this always sues in a dual capacity. And so those are separate. And if the plaintiff loses the representative capacity, the individual case still exists. So at a minimum, the labor code individual claims should be sent to arbitration. That's exactly right. Yes, Your Honor. Okay. So now what do we do about the PAGA claims? Because that's the one that seems to have confused everybody. This Court's order asks about, well, what is the impact of the Adolph case and the Villa-Lobos case? The Adolph case, of course, is the California Supreme Court case that creates the split scheme when the FAA applies, meaning that the individual PAGA claims get sent to arbitration and the representative PAGA claims don't. But the Adolph case, admittedly, only applies when the FAA applies. And in this case, in this posture, for purposes of this appeal, the FAA does not apply. Adolph doesn't address what to do in that situation. There's no answer to that from the California Supreme Court. Would you support certifying this question to the California Supreme Court? I think that would be a wonderful idea. The California Supreme Court has been dealing with these a lot. In fact, the one that's pending right now, LEPR, which is mentioned in the briefing, is fully briefed and will probably be decided before the end of the year. And that one has to do, LEPR has to do with whether or not every PAGA case claim necessarily includes an individual claim. So it's very relevant to what we're talking about, although I'll admit I can't guarantee that the LEPR decision will give you an answer. But it will certainly give all of us guidance and those who work in this area. So that might be something to rest on and to see what happens. But for now, we live in the world where we have Adolph, which is great in most cases, but not this case. And so that takes us to Villalobos, which is the only published California intermediate appellate court case to pick up where that gap left off. And Villalobos says, well, you can't split the claims. The PAGA claim has to stay together. And so you simply cannot send the individual piece to arbitration and the representative piece to court. So it does exactly what Adolph does not do. But it reasons that, well, there's no FAA, so you're under California law, and California law doesn't allow that split. It's a judicially created rule, and it's not something that the California Supreme Court has actually ever specifically addressed. So you're left with one published intermediate opinion. There's another appellate court that followed it, though, in an unpublished, correct? That's correct. You are talking about Grajeda v. Maersk, I believe. That's the only case. So you've got one published case. You have one unpublished case. But there's no basis for us, I think, that we could say that the Supreme Court, as is the state now, there's no basis for us to say we doubt that the California Supreme Court will not follow this, given that two intermediate courts have followed it. Well, I can't predict what the California Supreme Court would do. But I will point out. To make a reasonable prediction. Correct. And so let me help with that. I will also point out that despite Villalobos, there are at least five, possibly more, federal district court decisions that are not following Villalobos, that are doing something else. They are splitting the claims. Can you give an argument of why they should be – why they could be split under CAA? Well, I think the first argument is why should there be any difference? I mean the policies of the CAA and the FAA should be the same. I mean this creates a ridiculous mess. It's also very ironic that it's – when you're dealing with interstate workers who you would think would be subject to the federal law, instead they're not. They get this exception and they end up being – following state law, which goes off in its own unusual direction. The – you know, these cases were not in the briefing because this hadn't been addressed in the briefing. If you don't mind, I'd like to give you at least a citation to one case. I can give you more if you like. The one I would point you to is called Shanley v. Tracy Logistics, 2026, Westlaw 61534. That's from the Eastern District of California. And that case cites a whole bunch of others. So I won't give you the other ones unless you want them. I'd be happy to supply additional briefing on this case since the briefing as it exists now I don't think is quite adequate to get to the decision that needs to be reached. But the Shanley case from the Eastern District cites cases from the Northern District and the Central District. So there are judges throughout California that are not doing – that are not following the Villalobos line of reasoning. Your Honor asked – Are they citing Villalobos and rejecting it? No. It has not been specifically addressed. But the Shanley case cites all of these other cases. And in terms of a rationale, there are a number of different reasons. I think the Shanley case primarily says, well, sending a case to arbitration isn't really a claim – isn't really splitting the claim. It still exists. It's in court and it's in arbitration. It will come back together at some point. And so why do that? Why not do that? What's the problem? So I think that these cases, they're Federal cases. They're not California cases. But they do show that there is a difference of opinion about what to do in this situation under California law. Because these are cases that acknowledge an exception to the FAA. Usually it's a transportation worker exception. So it's not so clear exactly what to do. But I think that the main takeaway for purposes of deciding this appeal, apart from the Paga piece, is, well, but the labor code claims, the individual claims, those have to go to arbitration. And so at the very least – But under the CAA, doesn't the district court have the discretion not to send them? I would say a district court judge has discretion to do just about anything the district court judge wants. But in this instance, the district court judge was not exercising any discretion. District court opinion was very clear. He cited the Genesis case and provided a mootness analysis, which was not briefed by any of the parties. So this was sort of a surprise to begin with. But I don't think it would be right to say, well, the district court could exercise discretion. Therefore, this court is going to exercise discretion for him. I think that this court needs to say there's been a mistake about mootness. That's not the answer. Send it back down to the district court. And then the district court judge can deal with all of these issues, the Paga questions and the labor code questions. And if the district court judge feels like exercising discretion in some way about something, we can brief that and we can discuss it. But that hasn't happened yet in this case. You know, we're here on a essentially a two page minute order that rests on a misanalysis of Supreme Court law of mootness. That's very clearly an error. And so that's why we're here to seek a reversal of that. So, I mean, it seems to me that the question of whether the district court should exercise discretion under 1281.2 was brief to it. And it just didn't cite that. Are you arguing that we could remand for the district court to be more clear? But it seems to me from context, that's what the district court was responding to. It was an argument that it should exercise its discretion under 1281.2. I've got several responses. First of all, the 1281.2 argument is quite bogus because that the discretion provided under that state statute, not a federal statute, requires that there be some case involving a third party, which there isn't. Well, that's what I'm in trouble with here because you say you say there's no third party because, you know, all the individual plaintiffs are subject to the arbitration agreement. But that's not quite right. They're individual. Each individual employee has an individual arbitration agreement, and there's not one giant arbitration agreement. They all have. There's hundreds of whatever different arbitration agreements. So they are each third parties to each other's arbitration agreement. Well, but the California statute that says a California judge has discretion about sending a part of a case to arbitration has to do with if there's one case over here and there's another case over here, there's no other case. There's no pending case. And in terms of other class members, there isn't even a case. If one is sent to arbitration and one is pending in federal court, I mean, that seems to be exactly designed. I mean, there's there are. To me, the point is the risk of inconsistent rulings is not correct. Inconsistent rulings is what drives this. But there's no inconsistent rulings if there's only one case right now. There's one case in front of the district court judge with two plaintiffs and there's been no certified class. And those plaintiffs signed the same arbitration agreement. And it would seem strange for this court to affirm the district court judge's exercise of discretion. When the district court judge never exercised discretion, that's not what happened here at all. The district court plainly understood, misunderstood the law. And that itself is a mistake. But beyond that, I just don't see how a statute that gives a trial court judge in California discretion to do whatever he wants in terms of arranging arbitration versus a pending third case, other case, could even apply here. Well, it's the California Arbitration Act. I mean, you're you're saying it's assuming for the purposes of this motion, that is what the district court is applying, correct? Yes, that's true. That's true. But but again, the discretion that that has been focused on requires that there be some other case. And there isn't any other case. There's just this case. Do you have a California case that interprets this 12 year one the way you're interpreting it? I'm relying on the plain language of the statute. It's very clear. If you wanted cases about it, I suppose we could find some. I imagine that they would all say, well, if you're going to use this provision, you have to have a third party. The language says the court may refuse to enforce an arbitration agreement. A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party. Like there has to be another entity involved. That's what the court is concerned. I mean, that's what the statute is designed at, so that you don't have two different cases going that do different plaintiffs here are not considered to third parties to each other. No, they're exactly in the same situation. And it's the same case. Well, they're third. Well. That would say there's there's to me, it's about whether they are third party to the agreement at issue. But in any case, I understand. All right. I see that I'm just about out of time. We'll give you two minutes for rebuttal. We asked you a lot of questions. Thank you. Good morning, Your Honors. Karen Gold of Blackstone Law on behalf of Respondents Jacob Sage and Reginald McGowans. May it please the court. This appeal comes before you on a somewhat unusual procedural background. And that's because we're operating in a world where the district court has already ruled that we're outside of the Federal Arbitration Act under the Transportation Worker Exemption. And therefore, the California Arbitration Act applies. So we're within the CAA. And even within there, there's a ruling from the district court that the class action waiver is invalid and unenforceable under California law under Gentry. Those are not disputed here. So that forms kind of the boundaries of the world that we're operating in for this appeal. Appellant raises three arguments with respect to why it believes the district court erred. I'd like to address the first one because that pertains to the question that the court had posed prior to oral argument. So the first argument is that the district court supposedly erred when it declined to compel arbitration of respondents' individual PAGA claims. And I think the court is spot on. It's an issue that was not necessarily flushed out as thoroughly as it should have been. But I do believe in researching it further that it is dispositive here. Adolph V. Uber, in kind of the short answer to the court's question, is that Adolph V. Uber and the Villalobos case both stand for the proposition that under California law, when you are outside of the FAA and you're in the CAA world, there are no federal preemption issues or concerns. And therefore, you cannot split the PAGA claim. The longer answer involves a little bit of history with how California courts- Before we get there, then. Yes. I mean, so assuming I agree with you that the PAGA claims cannot be arbitrated, what about the individual labor code claims? Yes, Aaron. I appreciate that question. So there's a poison pill clause in this arbitration agreement that my colleague did not address in his oral argument, but I think it's also separately dispositive of this case. The poison pill in the agreement says – and I'd like to actually read the exact language because it's- Because it didn't seem like a poison pill to me, so I'd like to- The poison pill says, if any term, provision, or portion of this agreement is determined to be void or unenforceable, it shall be severed and the remainder of the agreement shall be fully enforceable. Provided, however, that if the waiver of class and collective claims is found to be unenforceable, then, quote, any claim brought on a class, collective, or representative action basis must be filed in a court of competent jurisdiction and such court shall be the exclusive form for such claims.  Here, it's undisputed that the district court found that the claims that were brought on a class action basis, that is, all of the labor code claims that were asserted as class action claims, that the class action waiver was unenforceable as to those claims. Correct. On the plain language of this agreement, that triggers what we're referring to as a poison pill, what my colleague is, in the briefing at least, referred to as a savings clause. Now, their argument here is that the court should just ignore that language. The court never should have reached it. But what – I don't understand how that – what you're calling the poison pill covers individual labor code claims. Because the individual labor code claims are brought on a class action basis. They're not separate individual labor – we plead a class action and there's a PAGA claim. They're individual claims that are brought on a class action basis. It's pled as a class action. So that language – But it could be brought under individual basis too under the law, right? I mean if someone – typically it is brought on class action basis. But someone – just one employee says I'm – just for me, I'm suing. Absolutely, Your Honor, but that's not how it was brought here. And so here it was brought as a class action. Wait, so are you saying you don't have individual labor code claims? I'm saying that the individual labor code claims – if I choose to sue an employer, I can do it on my own behalf. And I can make – as the person that controls the drafting of the pleading, I can say I'm suing on my own behalf as an individual and not plead class action claims. However, I also have the choice to bring a claim for those same alleged violations of the law on a class action basis. And that's why it triggers this language that says that – Claim brought on a class action basis. The whole point of a class action claim is saying the litigation of my individual claim will determine the claims of the class.  I mean it's saying I am representing a class. When I bring my individual claim, I want to represent an entire class. Correct. So you're representing the class with your individual claim. And as the person who is drafting the pleading, you choose whether you're going to bring it on an individual basis or on a class action basis. It is your individual claim. Once you plead it as a class action complaint or claim, it triggers this provision. And so here it's undisputed that the claim was brought on a class action and representative action basis. Is there any – is it California case law saying that what you're saying, that when you bring a class action, any individual claim – essentially you're saying it merges with the class action and so therefore the individual claim goes with the class action. This is somewhat unusual language. I don't have a case that specifically says that before me, but I'm happy to brief it for the court if it would be helpful. That would be helpful for me because I get what you're saying. But it says – as I read it, I think the plain language would be that the class action claim would – can't be arbitrated. It has to be brought. So you're saying – from the other side, they said there's four claims. You're saying essentially there's three claims at most. PAG, if you can split it, there's two, and then there's just one labor code. It's a class action and that's it. It's essentially – so there is some case law I can actually point the court to. It's – I have it in here related to a later argument, but I think it might be helpful here. It's Inree Hansen. It's 869F3D1052. And in that case, the court's talking about whether somebody loses standing when they lose their individual claim. So can they no longer bring a class action once their individual claim is resolved? And the answer is yes because the class action is kind of a fiction – not a fiction. It's a procedure that's created that allows you to bring your claim on a representative basis on behalf of others. I'll put it this way. As a plaintiff's lawyer, could you file simultaneously an individual court case and a class action case on behalf of the same individual raising the same exact claim? You cannot do that. You cannot do that. You cannot do that. I have this claim and I'm bringing it on a class action basis. Is that correct? Correct. Could you dismiss your individual labor code claims and still proceed in the class action? No, you cannot. The class action mechanism is dependent upon having a viable representative plaintiff that will represent the group under the requirements of certain procedural elements that are in place to protect the putative class members. And so one of those requirements is that the representative plaintiff is an adequate representative of the absent class members. And what Henson discusses is that when you no longer have a stake in the litigation because you don't have an individual claim, you're no longer able to bring a class action effectively. I'm sorry. I know I've seen cases, though, where they've sent individual claims to arbitration and then the question was whether or not that person can proceed in the class action. So it seems like you could split. You can't split a class action in that way is my understanding. I guess what would happen is because you're just bringing this as a class action here on the labor code. If it's – if the court says denies class cert, then you would have only individual claims, and then I assume then they could move to compel arbitration, that individual – because there's no longer a – you can't see class certification anymore at that point. Arguably, then they could move to compel that. Now it's a truly individual claim, not a putative class claim, and then it could go to arbitration.  A party or a court can dismiss class claims, and you're left with your individual claims. But it is all one and the same. You can't have a class claim without a viable representative plaintiff with those same claims that they're bringing on behalf of everyone. I would like to go back very quickly, unless the court has other questions on this, to the initial question the court had asked. So the longer version of the – the short version that I provided earlier is that you have to look at the – the panel should look at the history of how the California courts have treated PAGA claims historically. And the case that really is controlling here is a 2014 California Supreme Court case, Iskanian v. CLS Transportation, Los Angeles. It's 59 Cal 4348. And the ruling in Iskanian is that PAGA waivers are contrary to public policy, the FAA does not preempt it, and you can't split PAGA claims. Now admittedly, the language in Iskanian does not say that third point as clearly as I just said it. But Viking River, the United States Supreme Court, and multiple cases following Iskanian have unequivocally held that that's what the language in Iskanian stands for, that under California law, PAGA claims cannot be split. Do you see any reason to certify this question to the Supreme Court? I actually do believe it is an important issue that would benefit from certification. However, I don't know that this is the right case to do it in only because I think the other issues are dispositive here between the poison pill and between some of the other arguments I'm going to address shortly. I don't think it's necessary to resolve this, but I do think it might be helpful. So I would leave that to the court's discretion. Is putting – is the Leeper case, I think you said, is that pending? Is that worth waiting for, in your opinion? Or do you think things are clear enough? I believe that Villalobos is clear enough, and I believe it's a strong indicator of what the California Supreme Court would do. And it goes back to this kind of historical discussion I wanted to have briefly. But going to Villalobos, I mean the reasoning makes sense. But on the other hand, I mean can we give that so much weight? California appellate court is a little bit weird, different – well, not weird, but different from the federal courts in the sense that there's no horizontal stare decisis at all. Just any appellate court doesn't have to follow anything. They can go their own ways. They can just have a wide variety of opinions. So, I mean, I think reasoning seems to make sense, and Iskanian rule wasn't abrogated. It was only for FAA. But, I mean, this is state law. We can't give too much weight to that. Maybe it's better to see what happens more or wait for the California Supreme Court to tell us what the law is, state law. I would certainly defer to this panel on how it chooses to proceed in that respect. I will say, though, that California law is and has been for many years very clear, especially since Iskanian, that you cannot split these claims. And the only reason that that changed, and there are literally hundreds if not thousands of cases that follow that in California and federal courts applying California law when applicable, that followed Iskanian to the T until the United States Supreme Court issued its order in Viking River Cruises. And in Viking River Cruises, that threw the whole analysis kind of for a loop because all of a sudden the United States Supreme Court said that these claims are divisible, that POGLA claims are divisible, and it said that FAA preempts the Iskanian rule that says you can't divide the claims. So, if I understand correctly, your argument is under the CAA it's always been clear you can't split, shouldn't split, whatever. And then, to the extent Viking River changed that, it was only in the context of the FAA. But because we're essentially not in the context of the FAA, we're back to essentially Iskanian land, then Iskanian has been followed. And all that Villalobos did was say, clarify that. When we're not applying the FAA, we're applying Iskanian. That's absolutely correct, Your Honor. And there's a case that I wanted to cite for Your Honors. It's LaCour v. Marshalls of California, LLC. It's 117 Cal App 5th 505. And this case has a very detailed explanation and discussion from the California judges. This is a California appellate judge. And there's the primary opinion that was issued, but then there's also a concurring opinion by the same judge or justice that had issued the primary opinion where he talks about this in detail. And he explains how difficult it's been for the California courts to reconcile this claim-splitting issue, which is completely inconsistent with California law and how California courts have always interpreted PAGA to not be splittable. And so I would suggest that, you know, for some additional context of that issue, that's a great opinion to review. If we certify the question of whether these PAGA claims can be split, should we also certify whether 1281.2 under the CAA, what it means, what the third party means, whether, you know, giving discretion courts to stay arbitration in lieu of the court proceeding? I don't believe that issue needs to be certified. And I want to offer perhaps a slight different version of how we interpret 1281.4 than what the court had discussed with my other counsel. So PAGA actions have always been an action that's defined where the real party in interest is the state of California. It's the LWDA. They are deputizing private citizens who have to meet the aggrieved employee status to bring a claim on behalf of and for the benefit of the state of California. Every claim that's brought under PAGA at this time when this case was filed, 75 percent of anything recovered goes to the state of California. Even on a plaintiff's individual, and I say that kind of in quotes because it's the representative individual claim, 75 percent of the individual's claim, any penalties would go to the state of California. So under PAGA, the law is very, very clear that there is this third party because the state of California is the third party that is implicated here. It's kind of similar to KTAM suits. I mean, would we say the United States is the problem? I don't know. I'm asking you. Is it okay? Yes, Your Honor, absolutely. They've been regularly compared to those types of suits. If I understand opposing counsel's argument, they're saying 1281 doesn't apply unless when the third party is essentially a third party to the same court action. And I understood it to be saying that you look at the arbitration and you ask whether there's a third party involved in the court action. So in the arbitration that they're saying should be compelled, there's one employee and the employer because by definition we're talking about only an individual arbitration. And then the question would be under 12—is there a third—is there a court action, which would be this case, and is there a third party involved in that case? But they seem to be arguing, no, we wouldn't ask is there a third party involved in the court action who's not a party to the individual arbitration. We're asking if there's a third party in a whole other court action. Is there any court case that addresses that? I mean I'm not sure I agree with that argument as a fair reading in the plain language, but is there any case resolving this or how would you respond to that? My response is probably similar to my colleague's response, which is I look at the plain language. I'm happy to find additional case law and brief it if the panel thinks it would be helpful. But the plain language of 1281.2 says that the trial court can avoid having to submit any part of the suit to arbitration. It says, quote, a party to the arbitration agreement here—that's referring to Capstone—is also a party to a pending court action or special proceeding with a third party. Here that's the LWDA in our opinion. This is how we interpret it. arising out of the same transaction or series of related transactions, and there is a possibility of conflicting rulings on common issues of law or fact. So here you have a situation where they're asking that the court sever certain claims between the individual respondents and have them tried separately in arbitration where the law says at least the representative PAGA action portion at a minimum can't be sent to arbitration. So you have these three parties. I read it as being part of the same statute, but I do think that this gives the court a lot of discretion. And I believe, you know, my colleague had said that they don't believe the court exercised its discretion. I think that the court did exercise its discretion. It decided that there were ramifications that if—you know, it goes back to how class actions are fundamentally how they exist, right? And so I believe the district court did get it correct when it said that if you send an individual's claims to individual arbitration, whether they win or lose, that disposes of the entire class action. Because if they win, they no longer have a stake in it. And if they lose, they no longer have a stake in it. And so they can no longer serve as a representative of that putative class when it comes back. And taking that into consideration, and perhaps the case cited wasn't directly on point because it was in the FLSA statute, but there are cases that talk about this, including the Henry Henson case that I referenced earlier, where it says you can't send an individual claim to arbitration and have it resolved and allow that plaintiff to still have standing to bring a class action. That's not how the procedural mechanisms work here. Sorry, just on the last—the third-party point. Is there any case that says that L.A., the labor workforce is a third party? Tons of cases, Your Honor. I'm happy to submit them. I just don't have it here at the moment. Where they actually didn't appear, that just by nature of bringing the paga, they're the third party? They are appearing in through—so they deputize the plaintiffs to bring the case on their behalf. They don't actually appear. In that case, they're not a third party then. They are because the claims are being brought on their behalf. But you just said they deputized your client, so your client represents them. The third party—the way that the cases always discuss it is that the third party—sorry, the real party in interest is the state of California and the LWCA. I agree. They're definitely the real party in interest, but that's different than being a third party. If your client is the deputy for them, there's no third client. In the individual arbitration between employee A and the employer, is the state a party to that individual arbitration or a third party? A third party. In the pending court action? If it's just bilateral arbitration— Because the whole point is the individual arbitration, right, is going to happen between one employee and the employer. Correct. Right. And then the question, is there a court action pending that involves a third party? Correct, Your Honor. Who is not the employee and not the employer. And you're saying when there's a PAGA claim in the court action and the employee in the PAGA claim is actually a representative of the state, the state is a party to the court action and is by definition a third party to the individual arbitration. Absolutely correct, Your Honor. And that's how ample case law sets this arrangement up under California law. The state of California and the LWDA is considered a real party in interest. It is a third party. We understand it to be under this statute. Great. Thank you. Thank you. So the starting point from the other side was that Villalobos was dispositive. But it's obviously not because it doesn't address the labor code claim issues, which we've gone over. So for that, they rely on their poison pill argument. But there is no poison pill here. And you can see that clearly from the case they cite, the one they rely on. Westmoreland, the one that I just cited to start this at pages 979 and 980, talk very specifically about what you do when you have a case with individual labor code claims as class claims and then PAGA claims. And so the Westmoreland case says very clearly if it hadn't been for the poison pill, which existed in that contract, then the individual labor code claims would have been sent to arbitration. So there is your guidance under California law. It couldn't be any clearer. And it's not a poison pill because that language doesn't invalidate the entire contract. It only attacks those claims. Go ahead. I'm a little bit confused because I really had focused most on the PAGA claim, not the labor code claims. Are you claiming that the labor code claims can be split into individual and class? That doesn't seem to make sense to me. That's exactly what happens. That's what Westmoreland says, and that's the conversation that you just had all about when you bring a class claim. It's always an individual claim and a class claim. It's both, and those are analytically distinct. Yes, in the sense that pre-certification is an individual claim as a putative class, but I don't think you can litigate them separately, the two of them. They're because that person is the – wants to be the class representative in the class action. So I don't see how you can do an individual just with that individual claim. And if a class is denied, certification is denied, then that person has the option then to pursue its individual claim later sequentially. But I don't see how you can do it simultaneously, a class rep saying I want to be a class rep for a class action, but I also want to do individual. Well, I'm not sure that that would ever happen. So here there has been no class certified. Once the class action waiver has been invalidated, your own agreement says they must bring their class action claim in court. And the only way they can do that is saying I as an individual have this claim and I want to act as a class representative. The provision says that the class part of it can't be arbitrated. It's a lamps plus sort of argument. They have to bring their class claim as a class action in court. In court. Yeah. So in other words, only a court can certify a class. That's what's happening here. And they can't do that unless they have an individual claim. They go to court saying I have a claim and I want to serve as a class representative. I want to bring this as a class action. I want to bring my claim as a class action. You can't have two court actions going at the same time. There's no way in which an individual employee can say I'm going to file individual claim and have this whole separate action as a class action. It's they're bringing their claim as a class action. Because they wouldn't be an adequate or typical representative, class representative to have an individual claim. I mean there's no way you could certify a class at that point. So there's no way you can split it. Right. But the first line of – so the first line of their complaint says these two plaintiffs individually, comma, and on behalf of others. So they – I mean in the sense that it's individual claim preserving the rights. If class verification is denied, that person can pursue an individual claim. Again, sequentially, not simultaneously. Right. But Westmoreland says you can take the individual part and send that to arbitration. I mean that's what would have happened but for the poison pill in that case. I mean the thing is if you send the individual claim to arbitration, there's no way a class – they could ever bring a class action claim in federal court. No, that's not right at all. Why? Because if they go to – if you send the individual claim to arbitration, they either win in arbitration, right, and then therefore they can't be part of a class or they lose in arbitration and therefore they can't be part of a class. No. See, that's what tripped up the district court judge to begin with. I know I'm getting tripped up. That's why he thought Genesis was the answer to this. But why is that wrong? Because under Roper, which is the U.S. Supreme Court case, it controls this, and it's the Roper case. I mean it's a long line of Sosna, Garrity, and Roper. But that explains that once the class is – you get started, there is still an economic stake in the class because the – I mean and this is why class actions are brought. Because under Roper, the Supreme Court talks about how the stake is an economic interest in class certification. So they still can pursue that, and also there is a substantive – So you're saying after the claim is arbitrated, there's still a way to proceed in arbitration? Yes. Yes. There's no way. They can't be – they're not an adequate or typical representative under Rule 23 if they already have an arbitration separate. They no longer have a claim. It's been resolved. Well, but they still have a stake in whether or not they can get a class, which can then shift fees and expenses. And again, that's what Roper was – But they can't be a class representative. I mean it's – I think that they can. I think that the mootness part of it is wrong and that the Supreme Court case in Roper addresses that and that the – They already have a stake, but they can't bring a class action. Well, they've already brought it. I mean it's – they've brought the case. They haven't moved for certification. I mean maybe they should do that. But as we stand right now, there's just an individual labor code claims, and so those have to go to arbitration. Okay. And I don't think that – this court seems to be doing a lot of work, and you shouldn't have to do this work. You know, you either send it up to the Cal Supreme Court to let them resolve this mess, or you send it back down to the district court to get real briefing because, remember, this came off of a mandatory joint brief. Each side got three pages. There was no room to address any and all of this mess, and the judge just on his own said, oh, well, I see a mootness problem, so I'm done here. What would you say we would send back, just the whole – if we don't want to deal with this, what would you say we do to the district court, say to the district court? The district court's mootness analysis is incorrect. He shouldn't have relied on genesis because this court and many others have said that that doesn't apply in a class action case, which is what this is. And so the court needs to figure out what to do next, which is how we got here. The court asked for three pages each of joint briefing because it didn't know what to do. I think maybe it can ask again what to do and actually get real briefing instead of, you know, I mean, both sides are up here saying we haven't cited this case to you, but then there's – I mean, this is just not right how we even got here. There should be a do-over. This case should reverse. It can do so simply and cleanly if it likes. And this court shouldn't have to do all the work that we've just been struggling with to figure this out because that's what district courts are for. You're here to review. If you review what the district court did, what he did was wrong, and so it should be sent back. Thank you, Your Honors. Thank you both for the helpful argument. The case is submitted.
judges: LEE, BUMATAY, SUNG